UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11-cv-367-RJC

| TERRY GILMORE, | ) | |
| --- | --- | --- |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DENNIS DANIELS, Admin., | ) | |
| Maury Correctional Institute, | ) | |
| Respondent. | ) | |
| | ) | |

**THIS MATTER** comes before the Court on Respondent's Motion for Summary Judgment. (Doc. No. 6).

I.  **BACKGROUND**

Petitioner is a state court prisoner who, on December 4, 2006, in Gaston County Superior Court, the Honorable Timothy L. Patti presiding, was convicted after trial by jury of first-degree murder, first-degree burglary, and robbery with a dangerous weapon. Petitioner was subsequently sentenced to life in prison for the murder conviction and to consecutive terms of 117 to 150 months' imprisonment each for the burglary and robbery convictions. Petitioner was represented at trial by Rick Schultz and Thomas Hunn.

Petitioner appealed and on March 18, 2008, the North Carolina Court of Appeals issued an unpublished opinion finding no error. State v. Gilmore, 189 N.C. App. 404, 659 S.E.2d 98 (2008) (unpublished). Petitioner was represented on appeal by Leslie C. Rawls. Petitioner, proceeding pro se, filed a petition for discretionary review on March 31, 2008, and then a petition for writ of certiorari on May 23, 2008, in the North Carolina Supreme Court. On June 11, 2008, the North Carolina Supreme Court denied both petitions. State v. Gilmore, 362 N.C. 366, 663 S.E.2d 430 (2008) (unpublished).

On September 23, 2008, Petitioner filed a pro se motion for appropriate relief ("MAR") in Gaston County Superior Court. (Doc. No. 7-7). On April 23, 2009, the MAR was denied. (Doc. No. 7-8). On December 17, 2010, Petitioner filed a pro se petition for writ of certiorari in the North Carolina Court of Appeals, seeking review of the denial of his MAR. (Doc. No. 7-9). On December 29, 2010, the North Carolina Court of Appeals denied Petitioner's certiorari petition. (Doc. No. 7-11).

On February 10, 2011, Petitioner filed a pro se notice of appeal and a pro se petition for discretionary review in the North Carolina Supreme Court. On March 10, 2011, the North Carolina Supreme Court dismissed Petitioner's notice and petition. State v. Gilmore, 706 S.E.2d 481 (2011) (unpublished). Petitioner mailed his pending 2254 petition to this Court on July 20, 2011, and it was file-stamped in this Court on July 29, 2011. (Doc. No. 1). Respondent filed the pending motion for summary judgment on September 29, 2011, and Petitioner filed a response brief on November 15, 2011. (Doc. Nos. 6; 10).

The North Carolina Court of Appeals summarized the facts from Petitioner's trial as follows:

> On 18 August 2003, Sharon Rollinson and John Stover prepared for bed at Ms. Rollinson's house when they heard a knock on the door. When Ms. Rollinson asked who it was, a male, attempting to disguise himself as a woman, answered, "Tina." Ms. Rollinson testified at trial that she did not believe it was a woman, but when she asked again who was at the door, the voice again answered, "Tina." Ms. Rollinson then told Mr. Stover that she believed it was Defendant, an on-again, off-again boyfriend, at the door. In response, Mr. Stover told her to hide, and he got out of bed, obtained his handgun, and went to answer the door.
>
> Ms. Rollinson testified that she heard the door open and then the sound of at least four or five gunshots, followed by footsteps running down the steps to her house. She stayed hidden until Mr. Stover told her to call 911; when she came out of the closet in the bedroom, she found Mr. Stover lying on his back in the living room, shot six times. He later died at the hospital of his injuries.

State v. Gilmore, No. COA07-600, 2008 WL 706959, at *1 (N.C. Ct. App. Mar. 18, 2008).

Petitioner brings the following grounds for relief in his § 2254 petition: (1) there was insufficient evidence to support his conviction for first-degree burglary, as the State failed to present evidence that he either broke into or entered Ms. Rollinson's house; (2) the trial court plainly erred in introducing the testimony of Gastonia Police Detective James R. Anderson concerning other criminal charges filed against Petitioner; (3) he received ineffective assistance of trial counsel; and (4) North Carolina Prisoner Legal Services ("NCPLS") created an impediment to him filing his § 2254 petition, such that it affected his ability to timely file his petition.

## II. STANDARD OF REVIEW

A. Summary Judgment Standard

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law. FED. CIV. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

B. Section 2254 Standard

In addition to the motion for summary judgment standard set forth above, this Court must also consider the Petition for Writ of Habeas Corpus under the requirements set forth in 28 U.S.C. § 2254. Section 2254(d) provides that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to

3

the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); see also Tice v. Johnson, 647 F.3d 87, 103 (4th Cir. 2011).

A claim is considered "adjudicated on the merits" when it is "substantively reviewed and finally determined as evidenced by the state court's issuance of a formal judgment or decree." Young v. Catoe, 205 F.3d 750, 755 (4th Cir. 2000) (quoting Thomas v. Davis, 192 F.3d 445, 455 (4th Cir. 1999)). A state court adjudication is "contrary to" clearly established federal law only if "the state court arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412–13 (2000). "It is not enough for us to say that, confronted with the same facts, we would have applied the law differently; we can accord [the petitioner] a remedy only by concluding that the state court's application of the law in his case was objectively unreasonable." See Tice, 647 F.3d at 103 (citing Williams v. Ozmint, 494 F .3d 478, 483–84 (4th Cir. 2007)). "[W]e will not discern an unreasonable application of federal law unless 'the state court's decision lies well outside the boundaries of permissible differences of opinion.'" Id. at 108 (quoting Goodman v. Bertrand, 467 F.3d 1022, 1028 (7th Cir. 2006)).

In addition, "[a] federal habeas court will not review a claim rejected by a state court if the decision of [the state] court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Walker v. Martin, 131 S.Ct. 1120, 1127 (2011) (internal quotations and citations omitted). "The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." Id. (citation omitted). A procedural default also occurs "when a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Hyman v. Keller, No. 10–6652, 2011 WL 3489092, at *9 (4th Cir. July 21, 2011) (quoting Breard v. Pruett, 134 F.3d 615, 619 (4th Cir. 1998)); see also 28 U.S.C. § 2254(b)(1)(A).

Section 2254's exhaustion requirement demands that a petitioner give "the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." Larry v. Branker, 552 F.3d 356, 366 (4th Cir. 2009) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)). This includes filing petitions for discretionary review when that review is part of the ordinary appellate procedure in the state. See id. In North Carolina, a petitioner may satisfy § 2254's exhaustion requirement by directly appealing his conviction to the North Carolina Court of Appeals and then petitioning the North Carolina Supreme Court for discretionary review, or by filing a state post-conviction proceeding in the trial court division and then petitioning the North Carolina Court of Appeals for a writ of certiorari. See N.C. GEN. STAT. §§ 7A–31, 15A–1422.

However, a petitioner may overcome a finding of procedural default by showing cause and prejudice arising from the asserted constitutional error. McCarver v. Lee, 221 F.3d 583,

5

591–92 (4th Cir. 2000). To show "cause," a petitioner may make "a showing that the factual or legal basis for the claim was not reasonably available to counsel." Id. at 591 (quoting McCleskey v. Zant, 499 U.S. 467, 494 (1991)). To establish "prejudice," a petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Id. at 592 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)).

A habeas petitioner may also overcome his procedural default by demonstrating that the court's failure to consider the claim will result in a fundamental miscarriage of justice. Hedrick v. True, 443 F.3d 342, 359 (4th Cir. 2006) (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). The "fundamental miscarriage of justice" exception applies only to a narrow class of cases involving extraordinary instances "where a constitutional violation has 'probably resulted' in the conviction of one who is 'actually innocent' of the substantive offense." Dretke v. Haley, 541 U.S. 386, 392–94 (2004) (citing Murray v. Carrier, 477 U.S. 478, 494–96 (1986)).

## III. ANALYSIS

### A. Contention One–Insufficient Evidence of First-Degree Burglary

Petitioner first contends that there was insufficient evidence to support his conviction for first-degree burglary because the prosecution failed to present evidence that he either broke into or entered Ms. Rollinson's house. On federal habeas review, the standard of review for a claim of insufficient evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Wright v. West, 505 U.S. 277 (1992); Jackson v. Virginia, 443 U.S. 307 (1979). Any claim of insufficient evidence is necessarily a due process claim. Furthermore, it is well-established that, in reviewing claims of insufficient evidence, courts "must consider

circumstantial as well as direct evidence, and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established." United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

Plaintiff raised the first ground for relief to the North Carolina Court of Appeals on direct review. The North Carolina Court of Appeals rejected Petitioner's claim:

> The State must prove the following elements to sustain a charge of first-degree burglary: "(1) the breaking, (2) and entering, (3) in the nighttime, (4) into a dwelling house or sleeping apartment of another, (5) which is actually occupied at the time of the offense, and (6) with the intent to commit a felony therein." The "breaking" may be actual or constructive; the latter "occurs when entrance is obtained as a result of violence commenced or threatened by a defendant." A constructive breaking likewise takes place where a defendant induces an occupant of the dwelling house through "fraud or trickery" to open the door.
>
> In the instant case, Defendant argues that the fact that Ms. Rollinson and Mr. Stover did not believe that it was "Tina" at the door and instead knew that it was Defendant contradicts the notion of a "constructive breaking" since the fraud or misrepresentation was ineffectual. We find this argument to be without merit. Regardless of what Ms. Rollinson and Mr. Stover believed, the evidence showed that Defendant did engage in trickery to induce them to open the door. As such, his actions meet the definition of "constructive breaking" applied by our courts.
>
> Additionally, the State offered testimony that Mr. Stover's body was located by the couch in the living room, which was inside the front door; shell casings were also inside the room, and forensic evidence was introduced that Mr. Stover was shot from between two and eighteen inches away. Although there was no eyewitness testimony placing Defendant inside the house, Ms. Rollinson's aunt told the jury that Defendant admitted to her that he grabbed the gun from Mr. Stover and hit him several times before shooting him. We find this evidence sufficient for the jury to conclude that Defendant entered Ms. Rollinson's home when he shot and killed Mr. Stover.

State v. Gilmore, 2008 WL 706959, at *2 (citations omitted).

The state court's adjudication of Petitioner's claim of insufficient evidence as to the first-degree burglary conviction was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it an unreasonable application of the facts, given the

evidence presented at Petitioner's trial. In other words, after viewing the evidence presented at Petitioner's trial in the light most favorable to the prosecution, a rational trier of fact could find the essential elements of the crime of first-degree burglary beyond a reasonable doubt. Thus, Petitioner's first contention is without merit.

      B.      Contention Two–The Trial Court Erred in Admitting Testimony of Gastonia Police Detective James R. Anderson As to Other Pending Charges Against Petitioner

Petitioner next contends that the trial court erred in allowing the testimony of Gastonia Police Detective James R. Anderson concerning other charges filed against Petitioner based on a prior incident between Petitioner and Ms. Rollinson. The charges to which Petitioner is referring were for breaking and entering, assault on a female, attempted rape, and communicating a threat. (Doc. No. 7-18 at 391: Trial Transcript, Vol. III, Part 2; Doc. No. 7-19 at 437-38: Trial Transcript, Vol. IV, Part 1). Ms. Rollinson and Detective Anderson testified at Petitioner's trial about the events that led to the above-noted charges. This included testimony that on November 5, 2002, while on release from prison, Petitioner entered Rollinson's house through an unlocked door. (Doc. No. 7-15 at 55: Trial Transcript, Vol. II, Part 1). Rollinson was asleep, but awoke when Petitioner attempted to take off her underpants. (Doc. No. 7-16 at 114; 391: Trial Transcript, Vol. II, Part 2). After a struggle between the two, Petitioner told Rollinson that it was a good thing her boyfriend was not there because he would kill them both. (Doc. No. 7-18 at 391; see Doc. No. 7-15 at 55).

Petitioner raised this claim on direct review. The North Carolina Court of Appeals found that the admission of Detective Anderson's testimony was not error under state law. Gilmore, 2008 WL 706959, at *3. The court first noted that it would apply the plain error rule because

Petitioner failed to object to the evidence at trial. Id. The court then observed:

> At trial, Gastonia Police Detective James R. Anderson recounted an earlier incident in which Ms. Rollinson had reported to the police that Defendant had come into her home, attempted to assault her, and subsequently threatened that he would kill her and Mr. Stover if he found Mr. Stover at her home. Although warrants were issued for Defendant on charges of breaking and entering, assault on a female, attempted rape, and communicating a threat, they were not served on him until he was arrested for the murder of Mr. Stover and those related charges. Defendant contends that this testimony had no probative value and was irrelevant, as well as prejudicial and inadmissible under the North Carolina Rules of Evidence.
>
> We find this argument to be without merit. The earlier incident was relevant with respect to a motive for the attack for which Defendant was standing trial, and relevant evidence is generally admissible. As our Supreme Court has noted, "[e]vidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree."
>
> Moreover, even assuming arguendo it was error to allow the detective's testimony, given the overwhelming evidence against him, Defendant cannot show that, absent its admission, the jury probably would have reached a different verdict. The jury heard from two witnesses that Defendant had confessed to the crime, as well as testimony that his voice was heard by Ms. Rollinson and her daughter immediately prior to the shooting. This assignment of error is without merit.

Id. (citations omitted).

The state court's adjudication of Petitioner's claim regarding admission of Detective James R. Anderson's testimony was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it an unreasonable application of the facts, given the evidence presented at Petitioner's trial. With regard to state court evidentiary determinations based on state law issues, a federal habeas court's review is limited to assessing whether the alleged evidentiary error "so infected the entire trial that the resulting conviction violates due process." See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Here, Petitioner cannot show that the admission of the testimony was error, much less that the alleged error so infected the entire

9

trial such that the resulting conviction violated due process. Petitioner's second contention is without merit.

  C.  Contention Three–Ineffective Assistance of Trial Counsel

Petitioner next contends that he received ineffective assistance of trial counsel. In support of this ground for relief, Petitioner contends that counsel engaged in various "non-act[s]." Petitioner states specifically that trial counsel failed to "strenuously press for an in-depth inquiry of Juror No. 4 Deborah Klutz [sic]; whose husband work[ed] with the deceased." (Doc. No. 1 at 8).

Petitioner provides no indication in his § 2254 petition as to what the other "non-acts" by counsel might have been. In his MAR, Petitioner brought two additional ineffective assistance of counsel allegations: that counsel was ineffective for failing to object to testimony, in particular Detective Anderson's testimony; and that counsel failed to make a plea for jury instructions on the pending charges arising out of the prior incident involving Ms. Rollinson. Respondent assumes in its support brief that Petitioner here is referring to those two ineffective assistance of counsel claims. In his response brief, Petitioner does not dispute Respondent's characterization of his ineffective assistance of counsel claims.

Here, all of Petitioner's allegations in support of his claim for ineffective assistance of trial counsel are conclusory and unsupported and may be dismissed on this basis alone. As to the merits, in a summary denial the MAR court found that Petitioner had not shown ineffective assistance of counsel. Under clearly established Supreme Court law as set forth in <u>Strickland v. Washington</u>, to prove ineffective assistance of counsel, a petitioner must show that his counsel's performance was deficient and that, absent counsel's error, there is a reasonable probability that the outcome would have been different. 466 U.S. 668 (1984). Performance is deficient if it falls

below an objective standard of reasonableness, which is defined in terms of prevailing professional norms. Id. at 688.

The MAR court's adjudication of Petitioner's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of clearly established Supreme Court law, nor was it an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. That is, Petitioner has not shown deficient performance with regard to counsel's failure to object to Detective Anderson's testimony, or to counsel's failure to ask for instructions as to the criminal charges arising out of the prior incident between Petitioner and Ms. Rollinson. In any event, even assuming that Petitioner showed deficient performance, he has not proven the prejudice prong of Strickland and its progeny.

Next, with regard to Petitioner's ineffective assistance claim regarding juror Kluttz, the trial court noted on the record that one of the jurors informed the courtroom deputy that "yesterday her spouse was approached by some coworkers who said, 'I understand your wife is on this jury.'" (Doc. No. 7-17 at 207: Trial Transcript, Vol. III, Part 1). The court further noted that the coworkers indicated to the juror's husband that the coworkers had worked with one of the victims, Mr. Stover. (Id.). The court then brought juror Kluttz into the courtroom for questioning. (Id.). Juror Kluttz indicated that the information did not affect her and that she brought the information to the court's attention based on her concern that the information would somehow affect the other jurors, since Freightliner (apparently where her husband worked) was a "gossip mill." (Id. at 208). When questioned by the court, juror Kluttz assured the court that knowing this information would not prevent her from being fair and impartial, and that she believed she could be fair to both the State and Petitioner. (Id.). The court instructed juror Kluttz to return to the jury room and not to discuss the information with the other jurors. (Id. at

11

208-09). Upon inquiry from the court, counsel for neither the State nor Petitioner wished to be heard. (Id. at 209). The court then continued with the trial. (Id.).

The trial court's implicit finding of impartiality is a finding of fact presumed to be correct on federal habeas review. See 28 U.S.C. § 2254(e)(1). See also Patton v. Yount, 467 U.S. 1025, 1038 (1984). Here, Petitioner has not rebutted the presumption of correctness of the trial court's implicit finding that juror Kluttz could be impartial. In sum, Petitioner's third contention is without merit.

        D.      Contention Four–North Carolina Prisoner Legal Services Impeded the Timely Filing of the Petition

In his fourth and final contention, Petitioner contends that North Carolina Prisoner Legal Services impeded the timely filing of the petition. Because Respondent has informed the Court that the Petition was timely, there is no merit to this ground for relief, and it will be dismissed.

## IV. CONCLUSION

For the reasons stated herein, Respondent is entitled to summary judgment as to all of Petitioner's claims.

**IT IS, THEREFORE, ORDERED** that Respondent's Motion for Summary Judgment, (Doc. No. 6), is **GRANTED**. It is further ordered that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a

debatable claim of the denial of a constitutional right).

Signed: July 17, 2012

Robert J. Conrad, Jr.
Chief United States District Judge